## The American Preservers Co., Respondent, *v.* The Columbia Investment Co., Appellant.

(Superior Court of Buffalo — General Term, January, 1895.)

Plaintiff's agent, who was at the time indebted to it for moneys previously embezzled by him, individually purchased from defendant certain shares of its stock, in payment for which he gave the plaintiff's check. Immediately thereupon he pledged said stock as security upon the discount of his individual note and deposited the proceeds of the discount to plaintiff's credit, for the purpose and with the intention of making the account good for the check which he had given to defendant. In an action to recover the amount of the check from the defendant, *held,* that, as between the plaintiff and the defendant, the transaction was governed by the intent and purpose of the agent, and he having made the deposit of funds raised upon his own stock for the sole purpose of paying for the stock to defendant, plaintiff was not entitled to recover so far as the amount of such deposit entered into the payment of the check, but could only recover the difference between the amount of such deposit and the amount of the check.

*American Preservers' Co.* v. *Columbia Investment Co.,* 7 Misc. Rep. 509, reversed.

THIS is an appeal by the defendant from a judgment in favor of the plaintiff entered upon the verdict of a jury by direction of the court.

*N. W. Norton,* for appellant.

*Simon Fleischmann,* for respondent.

WHITE, J.   The plaintiff is a foreign corporation engaged in the business of manufacturing and selling fruit, preserves and jellies in different states.   Its business in this state was conducted by Charles F. Tomes, who had his office in this city.   Tomes was a general agent of the plaintiff in conducting its business.   The plaintiff kept an account with the Manufacturers & Traders' Bank, and Tomes was authorized to draw checks in plaintiff's name for use in its business only. On November 7, 1892, Tomes was indebted to the plaintiff in the sum of $2,800 on account of moneys belonging to the plaintiff theretofore embezzled by him.   On that day Tomes purchased from the defendant in his own name, as an individual, and not as the agent of the plaintiff, $1,000 of its capital stock and paid that amount for the stock with the plaintiff's check.   On the same day, but before paying for or receiving the stock, Tomes had arranged with the bank for the discount by it of his note for $1,000, and to accept the stock as security for the note, and this arrangement was carried out between Tomes and the bank immediately upon the receipt of the stock by him on November 7, 1892.   Tomes' note was discounted by the bank on the faith of the stock pledged to it by him as security for his note.   The discount on the note was $18.10.   For the proceeds of the discount the bank gave to Tomes as an individual, and not as agent, its teller's check for $981.90, which he deposited to the plaintiff's credit for the purpose and with the intention on his part of making the account good for the check which he had given to the defendant.   On the 9th day of November, 1892, in due course of business, the check which Tomes had given to the defendant was presented at the bank and paid.   The defend-

ant knew nothing of the transaction between Tomes and the bank, nor did the plaintiff know, until several months thereafter, that Tomes was indebted to it, or that he had misappropriated any of its property. The plaintiff now seeks to recover from the defendant the $1,000 which it drew from the plaintiff's bank account in payment for the stock which it sold and delivered to Tomes. It clearly appears that when he purchased the stock Tomes intended to pledge it as collateral security for his note, which the bank had agreed to discount for him before he made the purchase, and to use the proceeds of the discount to pay for the stock. It is equally clear that by depositing the proceeds of the discount to the credit of the plaintiff he did not intend that such proceeds should become the property of the plaintiff, but that, on the contrary, he did intend to apply those proceeds in payment of his stock by having them paid to the defendant. His plan for the accomplishment of his purpose was executed, and the defendant received its pay for the stock to the extent of $981.90 from those proceeds.

In form those proceeds became the property of the plaintiff instantly upon their deposit to its credit by Tomes; but the right to those proceeds, as between the plaintiff and defendant, is to be determined upon equitable principles, and if in equity and good conscience the defendant should be allowed to retain the $981.90 of the money it received, then to that extent the plaintiff must fail. No question is made but that to the extent of $18.10 it should succeed.

The check was taken by the defendant in payment for the stock; it was payable forthwith on presentation. Possibly Tomes could have used the proceeds of his note discounted by the bank in payment of his indebtedness to the plaintiff, or for any other purpose, and thereby have defrauded the defendant out of the price of the stock. The fact is, however, he did not do, nor attempt to do, any fraudulent act in connection with this transaction, but honestly carried out the plan adopted by him for purchasing and paying for the stock, and, as it seems to me, it would be a great injustice for the courts to

undo what Tomes did honestly and in the best of faith. In view of the fact that the $981.90 was advanced by the bank on the faith of the stock, equity and good conscience would seem to require payment for the stock by the plaintiff before it could appropriate the money to itself. All his acts in purchasing and paying for this stock should be treated as one single transaction, and the act of depositing the $981.90 to the plaintiff's credit should not be singled out and separated from the others as a basis for an equitable claim in favor of the plaintiff against the defendant, after the moneys raised on the faith of the property it sold have been actually paid to it.

The facts in the case at bar differ materially from those in *Gerard* v. *McCormick*, 29 N. Y. St. Repr. 709.

Conceding the fact to be that in the *Gerard* case the court, in denying the defendant's motion for a new trial, assumed that Boswell, the agent, had deposited his own funds to the credit of his agency account, from which he paid his individual debt, the defendant McCormick had not parted with any property upon the faith of which Boswell had raised the money which he deposited to his agency account. In the case at bar the money which Tomes deposited to the plaintiff's credit was raised upon the faith of the stock parted with by the defendant. Nor does it appear in that case that the money raised by Boswell upon his individual property and deposited to his agency account was so raised or deposited for the sole purpose of paying his individual debt. For aught that appears in the report of the case the object of Boswell in raising and depositing the money as he did was to pay and make good *pro tanto* his shortage in his agency account. I am of the opinion that if, instead of depositing the money raised on the stock and his note in the bank, Tomes had placed it in the hands of the plaintiff with a full statement of all the facts, including the fact of his embezzlement and indebtedness to the plaintiff, with instructions to the plaintiff to pay the same to the defendant, that thereupon the equitable title to the money would have vested in the defendant, and that its right to the money would even in such a case be superior to that of the plaintiff.

Much more is the right of the defendant superior as the case stands, because, as a matter of fact, until the payment was made to the defendant, Tomes retained actual physical dominion and control over those moneys or the credit obtained on their deposit.

There can be no doubt that if Tomes had intended the $981.90 as a payment *pro tanto* of his indebtedness to the plaintiff, it would have been impressed with a trust in its favor instantly upon the deposit being made, or in the absence of any intent or purpose on the part of Tomes when he made the deposit the same result would have followed, but what is here said is based upon the assumption that Tomes' intent and purpose was to use the money in paying for the stock, and that such is the fact seems beyond question upon the evidence. Tomes had an absolute right to apply or have the $981.90 applied in payment for the stock, and the manner or mode of exercising that right should not be permitted to destroy it as to the defendant, whose property was the effectual means of raising the money which it received. The defendant in accepting the plaintiff's check for the stock took only the risk of the funds drawn upon it being in fact the property of the plaintiff. In fact, those funds were raised for the benefit of the defendant upon the faith of property sold by it and paid for with a check against those funds and upon which they were drawn.

The intent and purpose of Tomes in the transaction determines its effect; that purpose and intent, as we have seen, was to purchase and pay for the stock with money raised by him individually on the faith of the stock itself, and he accomplished his purpose.

In the absence of the special facts and the purpose and intent of Tomes, to which attention has been called, the law would determine the effect of his acts and impute to him an intent to pay his indebtedness to the plaintiff *pro tanto*, but in equity and good conscience he was not at liberty so to use or dispose of the stock purchased from the defendant or defraud it of the purchase price; on the contrary, fair dealing

demanded that the stock be so used and disposed of as to insure the payment for it to the defendant; that has been done and should not be undone. .

The judgment and order appealed from should be reversed and a new trial ordered, with costs to abide the event.

Titus, Ch. J., concurs.

Judgment and order reversed and new trial ordered, with costs to abide event.

———

Julyana Pzepka, as Administratrix, Plaintiff, *v.* The American Glucose Co., Defendant.

(Superior Court of Buffalo — General Term, January, 1895.)

A complaint in an action for the death of plaintiff's intestate, which was caused by the burning of the building in which he was at work for the defendant, alleged that the fire originated in the dynamo room by reason of defects in the appliances and machinery, and that by reason of defective insulation the wires set fire to the woodwork, and further alleged that the fire and the burning of the building was due wholly to the carelessness of the defendant. *Held,* that such allegations made out a cause of action for negligence against the defendant, and that the same was not weakened by the further allegation of negligence of its employees in failing to attempt to put out the fire.

In such an action it is proper to allege and prove that the windows of the room in which the decedent was at work were screwed down.

White, J., dissents.

Demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

*Ullman & Ullman,* for plaintiff.

*Rogers, Locke & Milburn (L. L. Babcock,* of counsel), for defendant.

Titus, Ch. J.   The defendant demurs to the plaintiff's complaint. The complaint alleges that the fire through which the plaintiff's intestate was killed originated in the dynamo